UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
  NIGEL LIVINGSTON,                 :
                                         :
                     Plaintiff,      :     **MEMORANDUM DECISION AND**
                                         :     **ORDER**
      - against -             :
                                         :     24-cv-4489 (BMC)
  UNITED STATES OF AMERICA, *et al.*,    :
                                         :
                    Defendants.    :
-------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff Nigel Livingston brings the instant case against the United States and Correction

Officers Miguel Mateo and Jane Doe of the Federal Bureau of Prisons ("BOP") for injuries he

sustained while he was a pretrial detainee at the Brooklyn Metropolitan Detention Center.

Plaintiff asserts two causes of action: (1) against the United States under the Federal Tort Claims

Act ("FTCA") for the officers' negligence in failing to protect or otherwise prevent plaintiff from

being attacked by inmates and for the officers' deliberate indifference in denying and delaying

medical care to plaintiff after the attack; and (2) against Officers Mateo and Doe under Bivens

for violating plaintiff's Fifth Amendment rights when they deliberately denied and delayed

medical care to plaintiff despite his serious medical need.  The Court previously denied

defendants' motion to dismiss the FTCA claim against the United States.  Before the Court is

defendants' motion to dismiss the Bivens claim against Officer Mateo pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure.  For the reasons set forth below, the Court grants

defendants' motion to dismiss the Bivens claim.

## SUMMARY OF COMPLAINT

Plaintiff became a pretrial detainee under the custody of the BOP in August 2021 while his criminal charges in the Southern District of New York were pending. Plaintiff was housed at the Brooklyn Metropolitan Correction Center.

On June 26, 2022 at approximately 8:30 p.m., plaintiff left his cell on the top tier to watch the BET Awards on the television downstairs. Upon leaving his cell, plaintiff noticed that Officers Mateo and Doe "were inside the office/bubble hanging out and talking with other inmates" – in plaintiff's view, "not doing their jobs."

Two inmates then attacked plaintiff with sharp instruments outside of plaintiff's cell. Plaintiff was in excruciating pain and realized that he had been stabbed in his neck and right hand. Plaintiff used towels to try to stop the bleeding and ran to Officers Mateo and Doe for help. He told the officers that he had been stabbed and was in pain. In response, the officers told plaintiff to return to his cell and wait for help to arrive. Plaintiff waited in his cell for 18 hours, screaming in pain and calling for help, but help never arrived.

At 2:00 p.m. the next day, plaintiff met with his attorney for a scheduled meeting. Plaintiff's attorney noticed plaintiff's injuries and alerted officers, who finally brought plaintiff to a hospital off-site. There, hospital personnel advised plaintiff that his wounds were deep and that he should have arrived sooner for proper treatment.[1] Plaintiff received 18 stitches for the wound in his neck and 7 stitches for the wound in his right hand. He also received pain medication, antibiotics, and x-rays, and remained at the hospital overnight. Plaintiff continued taking antibiotics for several days thereafter.

---

[1] Plaintiff does not allege, and hospital personnel presumably did not explain, how "proper treatment" would have differed from the treatment plaintiff ultimately received.

When plaintiff returned to the detention center, he was immediately placed in the "box" and segregated from the general population.  He remained in the box for a month.  While in the box, the BOP did not tell plaintiff's family about the attack or about his placement in the box and denied plaintiff access to his attorney despite two scheduled visits.

Plaintiff felt pain for at least two months after the attack.  He sustained "permanent disfiguring scars" on his neck and right hand and currently "suffers from permanent limitation in the use of his right hand," including difficulty grasping and writing.  Plaintiff also suffers from PTSD, fearing another attack and that "no help will come if he is attacked by another."

Based on the above allegations, plaintiff brings FTCA claims against the United States for the officers' negligence which allowed the attack to occur and their subsequent deliberate indifference to plaintiff's medical needs.  Plaintiff also brings Bivens claims against Officers Mateo and Doe for violating plaintiff's Fifth Amendment rights when they deliberately denied and delayed medical care to plaintiff despite his serious medical need.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor."  Elias v. Rolling Stone LLC, 872 F.3d 97, 104 (2d Cir. 2017) (quoting Chase Grp. All. LLC v. City of New York Dep't of Fin., 620 F.3d 146, 150 (2d Cir. 2010)).

**DISCUSSION**

In <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized an implied private right of action against a federal agent who violated the Fourth Amendment in arresting the plaintiff and searching his home. Within a decade, the Supreme Court permitted <u>Bivens</u> remedies in two additional contexts: a Fifth Amendment employment discrimination claim against a congressman, <u>Davis v. Passman</u>, 442 U.S. 228 (1979), and an Eighth Amendment claim brought by a deceased prisoner's estate against prison officials for deliberate indifference to the prisoner's serious medical needs, <u>Carlson v. Green</u>, 446 U.S. 14 (1980).

Since deciding <u>Carlson</u>, the Supreme Court has declined every opportunity to extend <u>Bivens</u> to cover other constitutional violations, including in June of this year.  <u>See</u> <u>Goldey v. Fields</u>, 606 U.S. 942, 942 (2025).  As the Supreme Court has repeatedly made clear, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."  <u>Id.</u> at 942-43 (quoting <u>Egbert v. Boule</u>, 596 U.S. 482, 486 (2022)).  To that end, "recognizing a cause of action under <u>Bivens</u> is a disfavored judicial activity."  <u>Id.</u> at 944 (quotation marks omitted) (quoting <u>Egbert</u>, 596 U.S. at 491). In fact, the consistent rejection of any new claims under <u>Bivens</u> yields a reasonable conclusion that but for *stare decisis*, the Court would probably overrule <u>Bivens</u>. Instead, it has limited its scope as much as possible.

This Court must apply the Supreme Court's two-step test to determine whether plaintiff's <u>Bivens</u> claim may proceed.  "First, the Court asks whether the case presents a new <u>Bivens</u> context" – specifically, whether the case "is different in a meaningful way" from <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u>.  <u>Id.</u> (quotation marks omitted) (quoting <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 139 (2017)).  If the case presents a new <u>Bivens</u> context, then, at the second step, the Court asks

4

"whether there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." Id. (quotation marks omitted) (quoting Egbert, 596 U.S. at 492). "If there is even a single reason to pause before applying Bivens in a new context, a court may not recognize a Bivens remedy." Egbert, 596 U.S. at 492 (quotation marks omitted) (quoting Hernández v. Mesa, 589 U.S. 93, 102 (2020).

A.    **Plaintiff's Bivens Claim Arises in a New Context**

Plaintiff's case arises in a new context – but not for the reason defendants argue. Defendants concede that this case presents parallel circumstances to Carlson because both cases involve allegations of prison officials' deliberate indifference to an inmate's medical needs. Defendants argue, however, that the instant case arises in a different context than Carlson because "as a pretrial detainee, [plaintiff's] claim of constitutionally inadequate medical treatment arises under the Fifth Amendment rather than under the Eighth Amendment context recognized in Carlson." The Court is not convinced of defendants' argument that a case which parallels Bivens, Davis, or Carlson in all material respects presents a new context solely because it implicates a different constitutional right than the precedential cases.

In reaching their conclusion, defendants misconstrue the Supreme Court's holdings in Ziglar, Egbert, and Goldey. First, defendants argue that Ziglar "found the new-context inquiry to be easily satisfied" because the case "implicated a different constitutional right than Carlson." But Ziglar said only that the presence of a different constitutional right "*can* present a new context for Bivens purposes," not that it does. See Ziglar, 582 U.S. at 148 (emphasis added). In fact, Ziglar noted other factors that *can* present a new context, such as "if judicial precedents provide a less meaningful guide for official conduct." Id. And most importantly, in finding that

5

the case presented a new context, <u>Ziglar</u> did not rely only on the fact that this case was predicated on a different constitutional right than <u>Carlson</u>.  <u>Id.</u>  Rather, <u>Ziglar</u> also relied on the fact that "[t]he standard for a claim alleging that a warden allowed guards to abuse detainees is less clear under the Court's precedents" than "the standard for claims alleging failure to provide medical treatment to a prisoner."  <u>Id.</u>  Although the different constitutional right certainly moved the needle in <u>Ziglar</u>, defendants cannot reasonably argue that it was the sole or even determinative factor in the decision.

Second, defendants contend that <u>Egbert</u> "held that the context of plaintiff's claims was new even though the plaintiff's allegations were similar to the claims in <u>Bivens</u> itself and arguably presented almost parallel circumstances or a similar mechanism of injury."  Defendants are right that <u>Egbert</u> noted "almost parallel circumstances" and "a similar mechanism of injury" between its case and <u>Bivens</u>; defendants are wrong that <u>Egbert</u> <i>held</i> that its case arose in a new context.  <u>See</u> <u>Egbert</u>, 596 U.S. at 494-95.  <u>Egbert</u> reviewed (and ultimately reversed) the Court of Appeals' conclusion on the "special factors" second step: that "there was no reason to hesitate before recognizing a cause of action against [the federal agent]."  <u>Egbert</u>, 596 U.S. at 494.  The Court of Appeals "conceded" that the Fourth Amendment excessive-force claim presented a new context, and the Supreme Court did not review this determination.  <u>Id.</u>

Third and finally, defendants state that <u>Goldey</u> "reversed a judgment by the Fourth Circuit that permitted a plaintiff to maintain an Eighth Amendment excessive-force <u>Bivens</u> claim for damages against federal prison officials," and "observed that none of three contexts, where implied <u>Bivens</u> causes of action were permitted, involved an Eighth Amendment excessive-force claim."  Defendants tactfully avoid making the conclusion that they hope for this Court to make – namely, that <u>Goldey</u> <i>held</i> that an Eighth Amendment excessive-force claim presented a new

6

context. But like Egbert, Goldey holds nothing with respect to whether the case presented a new

context. In Goldey, the plaintiff had already conceded on his Fourth Circuit appeal that his claim

presented a new context. See Fields v. Fed. Bureau of Prisons, 109 F.4th 264, 268-69 (4th Cir.

2024), cert. granted, opinion rev'd sub nom. Goldey v. Fields, 606 U.S. 942 (2025). On

certiorari, the Supreme Court was entirely focused on the "special factors" second step. See

Goldey, 606 U.S. at 943-45. In sum, while Ziglar, Egbert, and Goldey all certainly evince the

Supreme Court's desire not to extend Bivens, neither Ziglar nor Egbert nor Goldey hold that the

presence of a new constitutional right, on its own, renders the context new.

     Moreover, there is reason to think that for a Carlson-type claim, whether the claim comes

under the Eighth Amendment or the Fifth Amendment, is irrelevant to determining whether the

case presents a new context. In assessing the sufficiency of plaintiff's Fifth Amendment

deliberate indifference claim, "the Court would employ the same analysis that it would have had

[p]laintiff's claim arose under the Eighth Amendment." See Carattini v. Behun, No. 21-cv-9373,

2024 WL 3274663, at *6 (S.D.N.Y July 2, 2024); accord Mirvis v. Quay, No. 19-cv-2573, 2023

WL 5671935, at *5 (E.D.N.Y. Sept. 1, 2023). As defendants concede, the Second Circuit has

applied the Eighth Amendment deliberate indifference test to pretrial detainees bringing actions

under the Due Process Clause of the Fifth Amendment. See Cuoco v. Moritsugu, 222 F.3d 99,

106 (2d Cir. 2000). Thus, the concern in Ziglar, that "judicial precedents provide[d] a less

meaningful guide for official conduct" than they did in Carlson, would not be present here. See

Ziglar, 582 U.S. at 148. In fact, Ziglar affirmed that the Supreme Court had "long made clear the

standard for claims alleging failure to provide medical treatment to a prisoner." Id.

     If the instant case was factually analogous to Carlson with the only difference being that

plaintiff is a pretrial detainee bringing claims under the Fifth Amendment, the Court might have

let the <u>Bivens</u> claim survive.  But "variances in circumstances and severity" render plaintiff's deliberate indifference claim different from that in <u>Carlson</u>.  <u>See</u> <u>Carattini</u>, 2024 WL 3274663, at *7 (quotation marks omitted) (quoting <u>Bettis v. Grijalva</u>, No. 21-cv-7505, 2023 WL 4141869, at *6 (S.D.N.Y. June 23, 2023) (collecting cases)).

In <u>Carlson</u>, a mother sued on behalf of her deceased son's estate, alleging that her son, Jones, died in prison because prison officials were deliberately indifferent to his serious medical needs in violation of his due process, equal protection, and Eighth Amendment rights.  <u>Carlson</u>, 446 U.S. at 16, 16 n.1.  Specifically, the mother alleged that:

> [Prison officials], being fully apprised of the gross inadequacy of medical facilities and staff at the Federal Correction Center in Terre Haute, Ind., and of the seriousness of Jones' chronic asthmatic condition, nonetheless kept him in that facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further impeded his breathing, and delayed for too long a time his transfer to an outside hospital.  The complaint further alleges that Jones' death resulted from these acts and omissions, that [prison officials] were deliberately indifferent to Jones' serious medical needs, and that their indifference was in part attributable to racial prejudice.

<u>Carlson</u>, 446 U.S. at 16 n.1.

<u>Carlson</u>'s complaint named a host of prison officials, including the BOP director, the BOP medical director, the warden (dismissed before the Supreme Court granted certiorari), the chief medical officer (who failed to provide an emergency procedure for times when physicians were absent), and the medical training assistant (who worsened Jones' asthmatic attack by using an inoperative respirator and administering injections of a drug contraindicated for one suffering an asthmatic attack).[2]  <u>See</u> <u>Green v. Carlson</u>, 581 F.2d 669, 671, 676 n.12 (7th Cir. 1978), <u>aff'd</u>,

---

[2] The plaintiff also named as defendants the United States Assistant Surgeon General and the Joint Commission on Accreditation of Hospitals (which was responsible for accrediting and inspecting the prison hospital).  Brief for Respondent, <u>Carlson v. Green</u>, 446 U.S. 14 (1980) (No. 78-1261), 1979 WL 199272, at *5.

446 U.S. 14 (1980).  In recognizing the availability of a <u>Bivens</u> remedy in this case, the Supreme

Court did not distinguish between classes of defendants or cabin the plaintiff's claim to any

particular act or omission.  <u>See Carlson</u>, 446 U.S. at 16-25.  The Court perhaps did not make this

distinction because Jones' death was not the result of a single act of deliberate indifference by a

single prison official, but the result of many related and compounding instances of deliberate

indifference by prison administrators and medical personnel alike.

At a high level, the instant case and <u>Carlson</u> are comparable: both cases involve prison

officials' deliberate indifference to medical needs, and in both cases, medical treatment was

delayed.  On nearly all other factual fronts, however, the cases are distinguishable.

First, the nature and severity of plaintiff's alleged injury differs significantly from that in

<u>Carlson</u>.  The inmate in <u>Carlson</u> suffered from a severe and chronic asthma condition that

ultimately resulted in his death.  <u>Carlson</u>, 446 U.S. at 16 n.1.  By contrast, plaintiff here was

stabbed and received stitches.  The core of plaintiff's deliberate indifference allegation –

officers' failure to promptly obtain medical treatment for an inmate with non-fatal wounds – "is

clearly and meaningfully different from [prison administrators and medical personnel's] failure

to provide life-saving medical care to an inmate with asthma."  <u>See</u> <u>Edwards v. Gizzi</u>, No. 20-cv-

7371, 2022 WL 309393, at *7 (S.D.N.Y. Feb. 2, 2022), <u>aff'd,</u> 107 F.4th 81 (2d Cir. 2024)

(quotation marks and citation omitted).

To be clear, the fact that plaintiff did not die does not make Officer Mateo and Officer

Doe's conduct any less egregious.  One could die from a stab wound to the neck, and perhaps

plaintiff was lucky to have survived (from the complaint alone, we cannot say for sure).  But the

fact that plaintiff did not die while waiting for medical treatment, did eventually receive adequate

medical treatment, and did not die from that medical treatment meaningfully distinguishes this case from Carlson.

Second, and perhaps more importantly, the instant case centers on a singular incident and the deliberate indifference of two officers during only that incident, whereas Carlson involved an ongoing illness and the ongoing deliberate indifference of prison administrators and medical personnel to that illness. In Carlson, Jones entered prison as a diagnosed chronic asthmatic and, shortly before his death, was hospitalized for 8 days because of his asthma; Jones' treating physician recommended that he be transferred to a prison in a more favorable climate, which did not happen; upon Jones' return from hospitalization, he was not given all of his prescribed medications; and when Jones had his fatal asthmatic attack, a medical training assistant attempted to use a respirator known to be inoperative, administered contraindicated drugs which made Jones' attack more severe, and improperly delayed Jones' transfer to an outside hospital.

By contrast, our plaintiff does not allege that he entered the detention center with a serious preexisting condition, that the medical facilities at his detention center were inadequate to care for his condition, that prison officials were deliberately indifferent to his medical needs on a continuing basis, or that his eventual treatment – which was necessary but not lifesaving – made his condition worse.

On balance, because the factual circumstances in this case differ significantly from those in Carlson *and* because this case comes under the Fifth Amendment rather than the Eighth, the Court finds that this case presents a new context.

## B.    Special Factors Counsel Hesitation

The Court must now ask "whether there are special factors indicating that the Judiciary is at least arguably less equipped than Congress to weight to costs and benefits of allowing a

10

damages action to proceed." Goldey, 606 U.S. at 944 (quotation marks omitted) (quoting

Egbert, 596 U.S. at 492). Given Goldey's strong words of caution against extending Bivens to

new contexts, it might be enough that "Congress has actively legislated in the area of prisoner

litigation but has not enacted a statutory cause of action for money damages." See id. (citing

Ziglar, 582 U.S. at 148-49). Notwithstanding, the Court sees additional special factors.

 Extending Bivens to allow plaintiff's Fifth Amendment claim for deliberate indifference

to medical care "could have negative systemic consequences for prison officials and the

'inordinately difficult undertaking' of running a prison." Id. (quoting Turner v. Safley, 482 U.S.

78, 84-85 (1987). Again, the distinguishing factor between this case and Carlson is not just the

different constitutional right at issue. Unlike Carlson, this case concerns a singular event,

involves violence between inmates, and hinges on the delay but ultimate provision of

necessary-but-not-lifesaving treatment. And although this case involves deliberate indifference

in the medical care context, the adequacy or efficacy of the medical care is not at issue like in

Carlson. Rather, what is at issue here is the officers' failure to promptly obtain such medical

care for plaintiff in response to plaintiff's medical need. Extending Bivens to allow plaintiff's

type of claim could implicate various aspects of prison management which were not implicated

by Carlson, such as security and housing protocols. It is difficult to "predict the systemwide

consequences of recognizing [plaintiff's] cause of action under Bivens," and "[t]hat uncertainty

alone is a special factor that forecloses relief." Egbert, 596 U.S. at 493 (quotation marks and

citations omitted).

 Further, "[t]he existence of [ ] alternative remedial procedures counsels against

allowing Bivens suits even if such procedures are not as effective as an individual damages

remedy." Goldey, 606 U.S. at 944-45 (quotation marks omitted) (quoting Egbert, 596 U.S. at

498).  Plaintiff has sought damages under the FTCA, which provides for monetary damages for torts committed by federal employees in the course of their official duties.  See 28 U.S.C. § 2679.  The FTCA is an alternative remedy which precludes plaintiff's cause of action under Bivens.[3]  See Mendoza v. Edge, 615 F. Supp. 3d 163, 171 (E.D.N.Y. 2022) (collecting cases); Bettis, 2023 WL 4141869, at *7 (same); Edwards, 2022 WL 309393, at *8-9 (same).

## CONCLUSION

Because this case presents a new context and because special factors counsel hesitation, the Court declines to extend a Bivens remedy to plaintiff's claim.  Therefore, plaintiff's Bivens claim under the Fifth Amendment is dismissed.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
          September 18, 2025

---

[3] Plaintiff argues that no special factors counsel hesitation because, per Carlson, the Bivens remedy "is more effective than the FTCA remedy."  Plaintiff's reliance is misplaced, however.  As Egbert and now Goldey make clear, the existence of an alternative remedy counsels against allowing a Bivens suit "even if such procedures are not as effective as an individual damages remedy."  See Goldey, 606 U.S. at 944-45 (quotation marks omitted) (quoting Egbert, 596 U.S. at 498).  Moreover, at the time Carlson was decided, the Supreme Court evaluated whether "Congress had provided an alternative remedy which it _explicitly_ declared to be a substitute for recovery directly under the Constitution and viewed as equally effective," whereas the Court now "defer[s] to congressional _inaction_ if the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms."  Edwards v. Gizzi, 107 F.4th 81, 85 n.3 (2d Cir. 2024) (Park, J., concurring) (quotation marks and citations omitted).  This Court therefore "gives 'little weight' to Carlson's conclusion 'because it predates the Court's current approach to implied causes of action and diverges from the prevailing framework.'"  Id. (cleaned up) (quoting Egbert, 596 U.S. at 500-01).