```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   NIGEL LIVINGSTON,                          :
                                              :
                          Plaintiff,          :      MEMORANDUM DECISION AND
                                              :      ORDER
              - against -                     :
                                              :      24-cv-4489 (BMC)
   UNITED STATES OF AMERICA,                  :
                                              :
                          Defendant.          :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Plaintiff Nigel Livingston brought the instant case against the United States and Officers Miguel Mateo and Jane Doe of the Federal Bureau of Prisons ("BOP") for injuries he sustained while he was a pretrial detainee at the Brooklyn Metropolitan Detention Center (the "MDC"). The Court previously dismissed plaintiff's <u>Bivens</u> claims against the officers; all that remains is plaintiff's FTCA claim against the United States. After an unsuccessful motion to dismiss the FTCA claim, the Government now moves for summary judgment on it.

The Government's motion is granted, and this case is dismissed for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiff was a detainee at the MDC from September 2021 through the end of 2023. At the time of the June 26, 2022 attack, plaintiff was housed in a "general population" housing unit, Unit 51, and was not confined in "continuous locked down status."

Plaintiff testified that officers were supposed to do rounds "every half an hour, an hour" to make sure the inmates were okay, but instead did rounds "when they fe[lt] like it." According to plaintiff, when officers weren't doing rounds, they were talking with each other "next door"

and in other housing units. Plaintiff knows this because he could see the officers through the windows on their office doors. Plaintiff estimates that "[f]or the 12-hour shift, [officers were] probably walking three hours out of the 12."

There is no BOP policy that dictates the number and frequency of rounds that correctional officers must conduct of the general population housing units. Instead, BOP Program Statement ("PS") 5521.06, titled "Search of Housing Units, Inmates, and Inmate Work Areas," directs each institution to "establish procedures to ensure all housing units and work areas are **searched routinely, but irregularly**." (Emphasis in original). Another BOP policy, PS 5500.14, requires each institution to conduct at least "five official inmate counts during every 24-hour period," but it does not say when these counts must occur.[1] In addition, "counts" appear to be different from "rounds": the BOP policies explain that rounds/inspections are primarily designed to detect contraband, prevent escapes, maintain sanitary standards, and eliminate fire and safety hazards, and that counts are used to maintain continuous inmate accountability.

Plaintiff now argues that correctional officers are required to conduct rounds every 45 minutes. He does not point to a formal BOP policy for this proposition (there apparently isn't one), but rather to the testimony of Officer Mateo. This is what Officer Mateo testified:

> So we're supposed to do rounds every hour, every 45 minutes. But there are times where you can't do a round every hour. You have the time they come out. Then you have time to feed. Then you have -- what do you call it? Sometimes you're doing paperwork. People come to you and they ask you questions. Sometimes they have legal. So you have to start calling, looking for inmates that have legal visits or they have to go to court. Sometimes they have visits. And you're running around looking for inmates because they don't respond to the microphone. So there are times where you can go around and not do a round on -- on that moment. But you go around doing rounds. You know, as you are looking

---

[1] PS 5500.14 also requires that correctional officers "observe all inmates confined in continuous locked down status, such as administrative detention or disciplinary segregation, ... at least twice per hour." It is uncontested that this policy does not apply to plaintiff, who was not in continuous locked down status during the attack.

> for people you're pretty much doing a round. So it – it's not – it's not a black and white. It's not like nothing is written in stone at that job. I mean, it is written in stone, but the job itself varies. Because if you are -- if you can't do a -- if you can't do a round every 45 minutes and you do it every hour because of whatever situation is going on. A body alarm in another unit you have to respond to. And those things happen. So nothing is textbook in the -- in the -- the Bureau of Prisons. Nothing. Everything is -- is done when it's supposed to be done, but sometimes the timing might be a little off.

Officer Mateo added that a round could take 20 or 30 minutes when inmates are locked in, and even an hour when the inmates are not locked in. Plaintiff's counsel did not ask Officer Mateo whether there was an official BOP policy requiring that officers conduct rounds every 45 minutes or every hour, and Officer Mateo did not say that there was one.

On the evening of June 26, 2022, plaintiff was attacked by two inmates, one of whom has been identified as Jamarr Simmons. Plaintiff was leaving his cell to watch the BET Awards on TV when he noticed the two of them waiting outside. He then felt something on the back of his neck and, upon placing his hand there, realized that he was bleeding. The assailants then pushed plaintiff back into his cell and tried to cut him more. Plaintiff estimates that he was inside the cell with the assailants for five to eight minutes "trying to fight them off from cutting [him] more." The attack ended with plaintiff "trying to push them back out of the cell" and the assailants running off.

Plaintiff had no history of altercations with either of his assailants and, in fact, did not know them at the time. The BOP's investigative report of the incident notes that plaintiff "smoke[d] K-2 and had owned [*sic*] money to several Blood gang members" and that Simmons was a Blood. Plaintiff denies consuming or possessing illicit substances while at the MDC and thus denies owing a drug debt to his assailants.

The investigative report sets forth a timeline of entries to and exits from plaintiff's cell based on CCTV footage. At approximately 8:17 PM, Simmons and Derrick Casado, another

3

inmate, entered plaintiff's cell.  At 8:18 PM, Casado left plaintiff's cell.  At 8:19 PM, Simmons left plaintiff's cell and returned at 8:22 PM for just 30 seconds.  At 8:33 PM, another inmate, Jordan Velez, left plaintiff's cell and re-entered at 8:35 PM with food.  At 8:41 PM, Simmons opened the cell door (presumably from the outside) while talking to plaintiff, then closed the door and walked away.  Plaintiff does not appear to contest the accuracy of the timeline (albeit it's unclear whether he's reviewed the CCTV footage himself); in fact, he relies on the timeline to argue that the "assault took place over 24 minutes."  However, if the timeline is accurate, then Simmons was in plaintiff's cell for just 2 minutes and 30 seconds.

No correctional officer observed the attack as it happened, nor does there appear to be CCTV footage of the attack itself (as opposed to the goings-on outside of plaintiff's cell that are documented in the investigative report).  Plaintiff maintains that the entire attack was captured on CCTV and that an employee was watching the incident as it unfolded, but there's no evidence of that.  Officer Mateo testified that he did not have access to the CCTV during his shifts, and that he "wouldn't know" whether a specific officer or some other employee watches the CCTV during shifts.

After the attack, plaintiff attempted to clean his wounds with a towel in his cell.  He approached a female officer for assistance, who instructed him to return to his cell.  Plaintiff remained in his cell overnight and did not receive medical attention until the following afternoon when an officer noticed his injuries while escorting him for a legal visit.  He was then taken to medical and subsequently to the hospital for treatment.  Plaintiff ultimately received 18 stitches for the laceration to the back of his neck, where he now has a large scar.  He also sustained cuts to his hands and lost significant feeling and function in his right hand as a result.

Plaintiff brings a claim under the FTCA against the United States, alleging that its correctional officers had a duty to "conduct[] security walk throughs every 30 minutes, observ[e] video surveillance, inspect[] the facility and inmates for dangerous instruments, and interced[e] in and prevent[] inmate on inmate assaults." Plaintiff contends that had the correctional officers "been doing their rounds and not being [sic] lazy and careless, the stabbing would not have occurred."

## DISCUSSION

### I. Legal Standards

#### A. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)). There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir.

5

2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994).  Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Anderson, 477 U.S. at 256.

B. Discretionary Function Exception

Unless the United States unequivocally waives its right to sovereign immunity in a statute, it is immune from suit.  Cangemi v. United States, 13 F.4th 115, 129 (2d Cir. 2021) (quoting County of Suffolk v. Sebelius, 605 F.3d 135, 140 (2d Cir. 2010)).  "The FTCA provides for a limited waiver of sovereign immunity for 'injury or loss of property ... caused by the negligent or wrongful act or omission' of a federal government employee 'acting within the scope of his office or employment.'"  Id. at 129-30 (quoting 28 U.S.C. § 1346(b)(1)). "[W]aivers of sovereign immunity are 'to be strictly construed, in terms of [their] scope, in favor of the sovereign.'"  Cooke v. United States, 918 F.3d 77, 81 (2d Cir. 2019) (quoting Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261 (1999)).

The waiver of sovereign immunity provided by the FTCA is limited by several exceptions, including the discretionary function exception. This exception bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  Thus, when an action "falls under the discretionary function exception, the United States has not waived its sovereign immunity, and federal courts lack subject matter jurisdiction over claims premised on those acts."[2]  Cangemi, 13

---

[2] Some courts have ruled that summary judgment "is an inappropriate vehicle for raising a question concerning the court's subject matter jurisdiction."  E.g., E & T Skyline Constr., LLC v. Talisman Cas. Ins. Co., LLC, No. 19-cv-

F.4th at 130; see also Fan ex rel. Zu Hua Chen v. United States, No. 04-cv-9540, 2007 WL 1032304, at *15 (S.D.N.Y. Apr. 3, 2007) ("[I]f the discretionary function exception applies, the jurisdictional grant of § 1346(b) to the district courts is inapplicable and Plaintiffs' claim must be dismissed for lack of subject matter jurisdiction.").

The discretionary function exception applies when two conditions are met: "(1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (quoting United States v. Gaubert, 499 U.S. 315, 322-23 (1991)). "When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Gaubert, 499 U.S. at 324.

Plaintiff bears the initial burden to state a claim that is not barred by the discretionary function exception. Molchatsky v. United States, 713 F.3d 159, 162 (2d Cir. 2013). Because plaintiff's amended complaint met that burden, the Court denied the Government's motion to dismiss. "Neither the Second Circuit nor the United States Supreme Court has explicitly answered whether the United States or a plaintiff bears the *ultimate* burden of proving the applicability of the discretionary function exception." Ruiz ex rel. E.R. v. United States, No. 13-

---

8069, 2022 WL 623858, at *5 (S.D.N.Y. Mar. 2, 2022) (quoting Wright & Miller § 2713). Among other things, these courts have reasoned that granting summary judgment "may bar further re-litigation of [a] case in an appropriate forum, whereas dismissal for lack of jurisdiction under Rule 12 has no such preclusive effect." Id. However, the Second Circuit has held that "where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment." London v. Polishook, 189 F.3d 196, 198 (2d Cir. 1999) (quoting Careau Group v. United Farm Workers of Am., AFL-CIO, 940 F.2d 1291, 1293 (9th Cir.1991)). "[T]he determination of whether the FTCA excepts the government's actions from its waiver of sovereign immunity involves both jurisdictional and merits issues." Redmon By & Through Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991).

cv-1241, 2014 WL 4662241, at *4 (E.D.N.Y. Sept. 18, 2014) (emphasis added). But the Court has no need to reach that question in this case: having reviewed the parties' evidence, the Court finds that the discretionary function exception clearly applies.

## II. Analysis

Turning to the first prong of the discretionary function exception: whether the acts alleged to be negligent – here, officers' failure to conduct rounds at a particular frequency – are discretionary as opposed to compelled by statute or regulation. Plainly, there is no statute or regulation which required correctional officers to conduct rounds of plaintiff's housing unit at a particular frequency. PS 5521.06 left that decision to the institutions and their officers, directing them to ensure that rounds are conducted "routinely, but irregularly." That's all.

Officer Mateo's flexible understanding of what correctional officers were "supposed to do" does not establish the existence of a mandatory directive to conduct rounds every 45 minutes or every hour. In fact, it's apparent from Officer Mateo's testimony that there *wasn't* a mandatory directive regarding rounds (*e.g.*, the job isn't "black and white," "the job itself varies," "nothing is textbook in ... the Bureau of Prisons"). As a result, decisions regarding the best way to comply with PS 5521.06 are discretionary in nature. See Enigwe v. Zenk, No. 03-cv-854, 2007 WL 2713849, at *8 (E.D.N.Y. Sept. 14, 2007) ("[A]lthough prison officials have a statutory duty to protect inmates from harm [under 18 U.S.C. § 4042(a)(2)], in general decisions regarding the best way to safeguard prisoners are discretionary in nature." (collecting cases)).

To be clear, even though PS 5521.06 gives correctional officers discretion as to when to conduct rounds, it does not give correctional officers discretion as to whether to conduct rounds at all. Thus, if correctional officers *never* conducted rounds, then prong one of the discretionary function exception would not be satisfied. But that's not the situation here. Both Officer Mateo

and plaintiff testified that correctional officers conducted rounds; that plaintiff took issue with how often the correctional officers did rounds is beside the point.

In opposition to the Government's motion for summary judgment, plaintiff adds that officers also "failed to intervene in unauthorized inmate movement." Plaintiff paraphrases a few provisions from PS 5500.14 which discuss unauthorized movement. However, plaintiff doesn't say how any of these provisions are relevant. None of the provisions define "unauthorized movement" or say that correctional officers must intervene in unauthorized inmate movement. It's also not apparent from these provisions that the "inmate movement" that happened on the night of plaintiff's attack (inmates coming in and out of plaintiff's cell) was actually unauthorized.

The Court therefore turns to the second prong of the discretionary function exception: whether the judgment or choice in question – the decision *not* to conduct rounds every 30 (or 45) minutes – is grounded in considerations of public policy or susceptible to policy analysis. Because BOP policy allows institutions (and thus their officers) to exercise discretion as to when to conduct rounds, "it must be presumed that the [officers'] acts are grounded in policy when exercising that discretion." Russo v. United States, 22-cv-1869, 2024 WL 726884, at *1 (2d Cir. Feb. 22, 2024) (quoting Gaubert, 499 U.S. at 324); see also Rhodes v. Chapman, 452 U.S. 337, 349 n.14 (1981) ("[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.").

There is a caveat: "if a government agent who is imbued with discretion behaves in a manner that is lazy or careless, his conduct cannot be said to be grounded in considerations of public policy and the discretionary function exception will not shield him from suit." Hartman v. Holder, No. 100-cv-6107, 2009 WL 792185, at *7 (E.D.N.Y. Mar. 23, 2009) (citing Coulthurst,

9

214 F.3d at 109-11).  This is known as the "negligent guard theory."  See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006).

It does not matter whose burden it is to prove that the correctional officers' actions were lazy or careless because there is no evidence of it.  The amended complaint alleged that had the correctional officers "been doing their rounds and not being [*sic*] lazy and careless, the stabbing would not have occurred."  That allegation was enough for plaintiff to make it past dismissal, as it fell squarely into the negligent guard theory.  But we are at the summary judgment stage now, and the Court needs to see some evidence from which to infer that the officers didn't do rounds frequently enough because of their laziness or carelessness.  There is no such evidence before the Court.

## CONCLUSION

Because the discretionary-function exception is jurisdictional, Cangemi, 13 F.4th at 130, the Court does not and cannot address the parties' alternative arguments on the merits, All. For Env't Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 85 (2d Cir. 2006) ("[A] district court must generally resolve material factual disputes and establish that it has federal

constitutional jurisdiction ... before deciding a case on the merits."). This case is dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
January 17, 2026